# Illinois Official Reports

## Supreme Court

***Bridgeview Health Care Center, Ltd. v. State Farm Fire & Casualty Co.*,
2014 IL 116389**

| | |
|---|---|
| Caption in Supreme Court: | BRIDGEVIEW HEALTH CARE CENTER, LTD., Appellant, v. STATE FARM FIRE AND CASUALTY COMPANY, Appellee. |
| Docket No. | 116389 |
| Filed | May 22, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where there were no state court cases on an insurance-coverage issue, two unreported cases from a federal district court within that state which purported to predict how the state's highest court would rule were not state law and did not create a conflict with the law of a neighboring jurisdiction so as to call for significant-contacts analysis—*Erie*. |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Rita Novak, Judge, presiding. |
| Judgment | Appellate court judgment reversed.<br>Circuit court judgment affirmed. |

| Counsel on Appeal | Phillip A. Bock and Robert M. Hatch, of Bock & Hatch, LLC, of Chicago, and Brian J. Wanca, David Oppenheim and Jeffrey A. Berman, of Anderson + Wanca, of Rolling Meadows, for appellant. |
|---|---|
| | Michael C. Borders and Rosa M. Tumialán, of Dykema Gossett PLLC, of Chicago, for appellee. |
| | Michael M. Marick, Karen M. Dixon and Timothy H. Wright, of Meckler Bulger Tilson Marick & Pearson LLP., of Chicago, for *amicus curiae* American Insurance Association. |
| Justices | JUSTICE BURKE delivered the judgment of the court, with opinion. Chief Justice Garman and Justices Freeman, Thomas, Kilbride, Karmeier, and Theis concurred in the judgment and opinion. |

## OPINION

¶ 1 This appeal presents the following question: When a federal district court sitting in a sister state makes a prediction under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), that the supreme court of that state would resolve a legal issue in a way that is at odds with Illinois law, does that prediction, in itself, establish an actual conflict between the two states' laws for purposes of a choice-of-law analysis? For the reasons that follow, we answer that question in the negative.

¶ 2 BACKGROUND

¶ 3 Bridgeview Health Care Center, Ltd. (Bridgeview), an Illinois corporation, filed a three-count, class action complaint in the federal district court of Northern Illinois against Jerry Clark, d/b/a Affordable Digital Hearing. Clark is an Illinois resident who operates Affordable Digital Hearing, a sole proprietorship dealing in the sale and repair of hearing aids, out of Terre Haute, Indiana. Bridgeview's complaint alleged that Clark sent Bridgeview and others across the United States unsolicited faxes in June of 2006. Count I of the complaint sought recovery under the Telephone Consumer Protection Act of 1991 (TCPA) (47 U.S.C. § 227 (2006)). Count II alleged that Clark was liable for common law conversion of Bridgeview's fax machine paper and toner. Count III alleged a violation of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2 *et seq.* (West 2010)).

¶ 4 Clark was insured under a comprehensive general liability policy issued by State Farm Fire and Casualty Company, an Illinois corporation. The policy was purchased through an agent in Indiana and issued to Clark at his business address in Indiana out of State Farm's West

- 2 -

Lafayette, Indiana office. Relevant here, the policy provided certain business liability coverage under both a "property damage" provision and an "advertising injury" provision.

¶ 5    Clark tendered defense of Bridgeview's suit to State Farm, which accepted the defense under a reservation of rights. In March 2010, State Farm filed a complaint for declaratory judgment in the circuit court of Vigo County, Indiana, against Clark and Bridgeview, seeking a declaration that it had no duty to defend Clark in the underlying federal lawsuit under either the property damage or advertising injury provisions of its policy. This action was eventually dismissed for want of personal jurisdiction over Bridgeview.

¶ 6    In June 2010, Bridgeview filed a declaratory judgment action against State Farm and Clark in Cook County, seeking a declaration that State Farm had a duty to defend and indemnify Clark because the unwanted faxes fell within both the advertising injury and property damage provisions of the insurance policy. State Farm, in turn, filed a counterclaim against Bridgeview and Clark, seeking a declaration it had no duty to defend or indemnify Clark.

¶ 7    Both Bridgeview and State Farm moved for partial summary judgment on the question of whether State Farm had a duty to defend. In its motion, State Farm acknowledged that, under Illinois law, coverage was provided under both relevant provisions of the insurance policy. State Farm maintained, however, that Illinois law conflicts with Indiana law on the coverage issues. State Farm conceded there were no Indiana state court cases which addressed whether coverage was provided, but relied on two unreported federal district court decisions from the Southern District of Indiana. These decisions predicted that the Indiana Supreme Court would hold there is no coverage under a general comprehensive liability policy for the claims raised in Bridgeview's complaint. State Farm maintained that these decisions, in themselves, created a conflict with Illinois law. Further, State Farm contended Indiana law should apply in this case because Indiana had the most significant contacts with the dispute. Thus, State Farm maintained its policy provided no coverage.

¶ 8    Bridgeview, in its motion, argued there was no conflict between Indiana and Illinois law. Bridgeview relied on a recent appellate court decision, *Pekin Insurance Co. v. XData Solutions, Inc.*, 2011 IL App (1st) 102769, which held that a federal district court decision which merely predicts what state law would be does not, in itself, constitute "state law," and, further, when there is no state case law on a question, there can be no conflict. Bridgeview also maintained that, even assuming Illinois and Indiana law were in conflict, Illinois had the most significant contacts. Therefore, according to Bridgeview, Illinois law should apply. Clark adopted Bridgeview's position.

¶ 9    On May 17, 2012, the circuit court of Cook County granted Bridgeview's motion for partial summary judgment and denied State Farm's motion. The circuit court agreed with Bridgeview that *Pekin* controlled the outcome; that there was no conflict between Illinois and Indiana law; and, thus, there was no need to conduct a choice-of-law analysis. Thereafter, the circuit court made a written finding pursuant to Supreme Court Rule 304(a) (Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010)), that there was no just reason to delay appeal.

¶ 10   The appellate court reversed and remanded. 2013 IL App (1st) 121920. The appellate court concluded that *Pekin* conflicted with the purpose of the choice-of-law doctrine and chose not

to follow that decision. Instead, the appellate court held that the federal decisions cited by State Farm were sufficient to raise the possibility of a conflict between Illinois and Indiana law and "that the potential for conflict between Indiana law and Illinois law requires the trial court to engage in a choice-of-law analysis for the case." *Id.* ¶ 22. We granted Bridgeview's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. July 1, 2013).

¶ 11                                    ANALYSIS

¶ 12    This case brings before us the circuit court's grant of partial summary judgment in favor of Bridgeview. Summary judgment is properly granted when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2010). Summary judgment rulings are reviewed *de novo. Hooker v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 2013 IL 114811, ¶ 15.

¶ 13    The parties do not dispute that, under Illinois law, State Farm has a duty to defend the underlying complaint pursuant to the insurance policy's "advertising injury" and "property damage" coverage. See *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352 (2006) (coverage provided under the advertising injury provision); *Insurance Corp. of Hanover v. Shelborne Associates*, 389 Ill. App. 3d 795 (2009) (coverage provided under the property damage provision). Nevertheless, State Farm maintains that the circuit court erred in granting Bridgeview's summary judgment motion because Indiana law applies.

¶ 14    "[A] choice-of-law analysis begins by isolating the issue and defining the conflict." *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 155 (2007); 1A C.J.S. *Actions* § 45 (2005); 15A C.J.S. *Conflict of Laws* § 30 (2012). A choice-of-law determination "is required only when a difference in law will make a difference in the outcome." *Townsend*, 227 Ill. 2d at 155; *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 59 (2007). The party seeking the choice-of-law determination bears the burden of demonstrating a conflict, *i.e.*, that there exists a difference in the law that will make a difference in the outcome. See *Chicago Board Options Exchange, Inc. v. International Securities Exchange, L.L.C.*, 2012 IL App (1st) 102228, ¶ 44. Once a conflict between laws is established, the analysis turns to which law should be applied. *Townsend*, 227 Ill. 2d at 157. We review *de novo* a circuit court's decision on a choice of law issue. *Id.* at 153-54.

¶ 15    No Indiana state court has addressed the question of whether the sending of unsolicited faxes falls within a comprehensive liability policy's provisions, either as an advertising injury or as property damage. However, two unreported federal district court decisions, *Ace Mortgage Funding, Inc. v. Travelers Indemnity Co. of America*, No. 1:05-cv-1631-DFH-TAB, 2008 WL 686953 (S.D. Ind. Mar. 10, 2008), and *Erie Insurance Exchange v. Kevin T. Watts, Inc.*, No. 1:05-cv-867-JDT-TAB, 2006 WL 1547109 (S.D. Ind. May 30, 2006), have predicted Indiana law. These decisions predicted that the Indiana Supreme Court would hold there is no coverage for claims such as Bridgeview's under comprehensive general liability policies. In so holding, the district courts relied on *American States Insurance Co. v. Capital Associates of Jackson County, Inc.*, 392 F.3d 939 (7th Cir. 2004). In that decision, the Seventh Circuit looked at Illinois law and predicted that this court would hold that coverage was unavailable

under a comprehensive general liability policy. That position was subsequently rejected by this court in *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352 (2006). The question before us in this case is whether the federal district court decisions can be the source of an outcome determinative conflict so as to trigger a choice-of-law analysis. State Farm contends they can. State Farm maintains that the federal district court decisions, in and of themselves, establish a conflict between Illinois and Indiana law. We disagree.

¶ 16    Under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), a federal district court in a diversity action must apply the law of the state in which the court sits with respect to substantive matters. In the absence of prevailing authority from the state's highest court, the district court "must make a predictive judgment as to how the supreme court of the state would decide the matter if it were presented presently to that tribunal." *Allstate Insurance Co. v. Menards, Inc.*, 285 F.3d 630, 635 (7th Cir. 2002). Such a predictive judgment is not, in fact, state law; it is an " '*Erie* guess' " as to what state law would be. *Id.* at 638. As one commentator has noted, "even if the rule in question is embraced by the state's highest court at a later date it remains true that the rule applied in federal court did not in fact constitute a sovereign command of the state." Bradford R. Clark, *Ascertaining the Laws of the Several States: Positivism and Judicial Federalism After Erie*, 145 U. Pa. L. Rev. 1459, 1505 (1997); see also, *e.g.*, *Pekin Insurance Co. v. XData Solutions, Inc.*, 2011 IL App (1st) 102769, ¶ 23 (federal district court decision making an *Erie* prediction is not state law); Paul A. LaBel, *Legal Positivism and Federalism: The Certification Experience*, 19 Ga. L. Rev. 999, 1015 (1985) ("When a federal court makes an *Erie* determination of a question of first impression, the 'law of the state' that the federal court purports to apply to the case is, in reality, federal law."). As in Illinois, Indiana courts recognize that federal district court decisions making an *Erie* prediction are not binding on questions of state law; Indiana courts are under no obligation to accept federal district court decisions as the law of Indiana. *League of Women Voters of Indiana, Inc. v. Rokita*, 929 N.E.2d 758, 763 (Ind. 2010); *Harris v. State*, 985 N.E.2d 767, 781 (Ind. Ct. App. 2013).

¶ 17    Because a federal district court's *Erie* prediction is not state law, such a prediction cannot, by itself, establish a conflict between state laws. Thus, the fact that the federal district court decisions cited by State Farm in this case predicted that the Supreme Court of Indiana would reach a result at odds with Illinois law is not, standing alone, sufficient to establish a conflict between the law of Illinois and Indiana. This is not to say, however, that when a circuit court in Illinois is confronted with a motion alleging a conflict of laws it may not consider what the federal district court has to say about our sister state's law. If, for example, the federal district court bases its *Erie* prediction on the holdings of the state's intermediate appellate courts (see, *e.g.*, *Menards*, 285 F.3d at 637), that would be a relevant consideration for the circuit court. But the focus must be on the underlying state law, and not merely the fact of the *Erie* prediction itself. Only when the movant establishes a conflict between state laws to the circuit court's satisfaction is a choice-of-law analysis required.

¶ 18    State Farm maintains, however, that in *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985), the United States Supreme Court relied upon a federal district court's *Erie* prediction to find a conflict between state laws. In *Shutts*, the Kansas state courts, in a class action lawsuit, applied Kansas law to claims concerning the awarding of interest on suspended royalty

payments from gas leases, even though 99% of the gas leases at issue and 97% of the plaintiffs had no connection to Kansas. *Id.* at 814-15. On appeal to the Supreme Court, the defendant argued that this violated due process. The Supreme Court agreed. In addressing the issue, the Court noted it was required to determine whether Kansas law conflicted with other states' law, particularly Oklahoma and Texas. With respect to Oklahoma, the Court concluded that Oklahoma law required an interest rate on the royalties of 6%, not the higher 15% imposed by Kansas. *Id.* at 816-17. Thus, Oklahoma and Kansas law conflicted. In reaching this conclusion, the Court cited to an Oklahoma statute and supreme and appellate court case law. *Id.*

¶ 19    With respect to Texas, several conflicts existed, including the interest rates. The Court again cited to a Texas statute and Texas state court case law to reach this conclusion. Although the Court did reference one published Northern District of Texas case interpreting Texas law in a "moreover" sentence, it had already found at least one clear conflict. The basis for reversal was the conflicting interest rates, and, because of this conflict alone, the Court concluded the Kansas courts erred in holding that Kansas law applied to all transactions. *Id.* at 818. The Supreme Court did not hold that a federal district court's *Erie* prediction, by itself, established a conflict of state laws.

¶ 20    State Farm also relies on *Sears, Roebuck & Co. v. National Union*, 331 Ill. App. 3d 347 (2002), for the proposition that a federal district court's *Erie* decision establishes a conflict between state law. *Sears* does not so hold. In *Sears*, the parties conceded that Pennsylvania law applied. The question before the court was whether an Illinois circuit court could accept a federal district court decision interpreting Pennsylvania law *over* a Pennsylvania intermediate court decision. *Sears*, 331 Ill. App. 3d at 351. The court answered that question in the negative. Specifically, it held, "[b]ased on the holdings in *Moscov* [*v. Mutual Life Insurance Co. of New York*, 387 Ill. 378 (1944)] and *Continental-Midwest Corp.* [*v. Hotel Sherman, Inc.*, 13 Ill. App. 2d 188 (1957)] and applying the principles set forth above, this court holds that Illinois state courts have the discretion to rely on persuasive federal diversity decisions in *predicting* how a sister state's supreme court would rule on a matter at issue, in the absence of controlling authority from the sister state's supreme court or intermediate appellate court." (Emphasis added.) *Id.* at 353. In *Sears*, the choice of a sister state's law was already established. The issue for the circuit court in that case was how to determine the sister state's law in a situation where the court had to do so. *Sears* did not, however, address how a conflict of laws is to be established and *Sears* did not hold that a federal district court's *Erie* prediction is sufficient, in itself, to establish a conflict of state laws. That question simply was not before the court.

¶ 21    State Farm also points to *Moscov* and *Continental-Midwest Corp.* and contends that a circuit court can consider all data to ascertain a state's law, including federal district court decisions, and whether there is a conflict between two states' laws. While it may generally be true that a court can consider all data in ascertaining or interpreting another state's law, neither of these cases involved a discussion of whether it was appropriate to utilize a federal district court's *Erie* prediction to determine whether an actual conflict exists between state laws. The question before these courts was whether a state lower court decision could be deemed that state's law. In *Moscov*, we held that Illinois courts must accept the decision of an intermediate court of review as stating the law of another jurisdiction in the absence of any conflicting

decision by another appellate court of coordinate jurisdiction in that state or by its highest court of review. *Moscov*, 387 Ill. at 389. This holding was followed in *Continental-Midwest Corp.*, which concluded that a Delaware chancery court decision stated that state's law. *Continental-Midwest Corp.*, 13 Ill. App. 2d at 196. Neither *Moscov* nor *Continental-Midwest Corp.* holds that a federal district court's *Erie* prediction, standing alone, establishes a conflict of state laws.

¶ 22    State Farm also relies on *Banks v. RIBCO, Inc.*, 403 Ill. App. 3d 646 (2010), for the proposition that the circuit court can rely on a federal district court's *Erie* prediction to establish a state-law conflict. Again, *Banks* does not support this position. In *Banks*, the parties agreed there were several "critical" conflicts between Illinois and Iowa dramshop laws. In identifying one of those conflicts, the appellate court set forth an Iowa statute as well as a published federal district court case interpreting that statute. In identifying a second conflict, the court set forth an Iowa statute. *Id.* at 649. Because a "real conflict" between *state* laws had been identified, the court conducted a choice-of-law analysis.

¶ 23    Lastly, State Farm argues that the mere *potential* for a conflict between state laws is sufficient to warrant a choice-of-law analysis. The appellate court below reached the same conclusion. The appellate court reasoned that when the law of another jurisdiction is uncertain, courts should undertake a choice-of-law analysis to determine which state's law applies. According to the appellate court, "because the application of Indiana law could possibly lead to a different result than that reached under Illinois law, the trial court must first determine which state has the most significant contacts to the dispute, and then apply to the dispute the law of the state with the most significant contacts." 2013 IL App (1st) 121920, ¶ 22. In reaching this result, the appellate court below relied on *Sterling. Sterling Finance Management, L.P. v. UBS PaineWebber, Inc.*, 336 Ill. App. 3d 442 (2002).

¶ 24    The question before the court in *Sterling* was the scope of the corporate attorney-client privilege. In defining the scope, Illinois applies the control group test. *Id.* at 448. New York law on that question was not clear. The *Sterling* court correctly recited the principle that a choice-of-law determination is "not implicated unless there is an *actual conflict* in the law of the two states." (Emphasis added.) *Id.* at 447. The court concluded that a "true conflict" existed between Illinois and New York law. *Id.* at 451. Confusingly, however, the court also stated that "[b]ased on the uncertainty of New York law, and its rejection of the control group test in a different context, we believe it prudent to consider that an actual conflict *may exist*" and therefore, undertake a choice-of-law analysis. (Emphasis added.) *Id.*

¶ 25    To the extent that *Sterling* holds that a mere possibility of a conflict of laws is sufficient to require a choice-of-law analysis, we disagree. As the United States Supreme Court has observed, "there can be no injury" in applying the local forum's law if that law is not in actual conflict with the law of another jurisdiction. *Shutts*, 472 U.S. at 816. Applying Illinois law in this case does no injury to State Farm if Indiana law is not in actual conflict with Illinois. Further, it is unclear what the appellate court below and State Farm mean by a "potential" conflict of laws. There is always a "potential" for differences to arise on state-law questions, even on matters that have previously been addressed. A "potential" conflict standard would appear to create substantial uncertainty in deciding what law to apply. We adhere to settled

law: a choice-of-law determination is required only when the moving party has established an actual conflict between state laws.

Apart from the *Erie* predictions made in the Indiana federal district court decisions, State Farm does not argue that Indiana law is in conflict with Illinois law. Indeed, State Farm asserts that "what the law of Indiana actually is has no bearing on the dispositive question presented in this appeal—whether a federal district court's *Erie* prediction can be the source of an outcome determinative conflict so as to trigger the most significant contacts test." Because State Farm identifies no Indiana law on point, we conclude that State Farm has failed to meet its burden of demonstrating an actual conflict exists between Illinois and Indiana law. We note that this holding does not offend the notions of full faith and credit. We are not refusing to give "the public Acts, Records, and judicial Proceedings of every other State" (U.S. Const., art. IV, § 1), here Indiana, the credit they deserve since none of those exist in Indiana on the question at bar.

CONCLUSION

For the foregoing reasons, the judgment of the appellate court is reversed. The judgment of the circuit court awarding partial summary judgment in favor of Bridgeview is affirmed.

Appellate court judgment reversed.

Circuit court judgment affirmed.